UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                                    Case Nos. 6:11-bk-06493
                                                          through 6:11-bk-06497

**CORDIA COMMUNICATIONS CORP.,**          Chapter 11
**et al.[1],**

        Debtors.                                   Joint Administration
                                                   Request Pending

_____/

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING EMPLOYMENT AND RETENTION OF DEVELOPMENT SPECIALISTS, INC. AND JOSEPH J. LUZINSKI AS CHIEF RESTRUCTURING OFFICER TO THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE

        Cordia Communications Corp. ("CCC"), Cordia Communications Corp. of Virginia ("CCCVA"), My Tel Co., Inc. ("MTC"), Midwest Marketing Group, Inc. ("MMG"), and Northstar Telecom, Inc. ("NST", NST, CCC, CCCVA, MTC and MTG being collectively referred to as the "Debtors"),  by and through undersigned counsel, hereby move the Court, pursuant to this motion (the "Motion"), respectfully requesting the entry of an interim and final order, pursuant to §§ 105(a), 363(b), 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Fed. R. Bankr. P. 9013 (the "Bankruptcy Rules"), authorizing the retention of Development Specialists, Inc. ("DSI") to provide restructuring and management services, including the appointment of Joseph J. Luzinski as Chief Restructuring Officer ("CRO")

---

[1]         The last four digits of the taxpayer identification number for each of the debtors seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662].

to the Debtors, *nunc pro tunc* to the Petition Date (defined herein). In support of this Motion, the Debtors rely upon the *Declaration of Joseph J. Luzinski in Support of the Debtors' Motion for Entry of Interim and Final Orders Authorizing Employment and Retention of Development Specialists, Inc. and Joseph J. Luzinski as Chief Restructuring Officer to the Debtors, Nunc Pro Tunc to the Petition Date* attached hereto as **Exhibit "A"** (the "Luzinski Declaration") In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory bases and local procedures for the relief requested herein are §§105(a) 363(b), 1107(a) and 1108 of the Bankruptcy Code, and Bankruptcy Rule 9013.

## BACKGROUND

3.      On May 1, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      CCC, CCCVA, NST, and MTC (collectively, the "CLEC Debtors") provide telecommunications services as a competitive local exchange carrier or CLEC. As such, the CLEC Debtors offers small businesses and residential consumers

bundled services that include local dial tone, unlimited domestic long distance, and unlimited feature plans by leasing a portion of the network owned by other telecommunications carriers. These leasing arrangements are controlled by multi-state, multi-year interconnection and commercial services agreements that allow the CLEC Debtors to offer telecommunications services to consumers without incurring the capital expenditures associated with building its own network. Certain of the CLEC Debtors have commercial services agreements with both incumbent local exchange carriers or ILECs, including Verizon and Qwest, and non-incumbent carriers.

5.     CCC currently holds licenses to operate in twenty-seven (27) states throughout the contiguous United States; CCCVA holds a license to operate in the Commonwealth of Virginia; MTC is licensed to offer local and long distance services in nine (9) states and has customers in seven (7) of those states; and, NST currently holds licenses to operate in thirteen (13) states and provides services in twelve (12) of those states. The CLEC Debtors currently have approximately 56,000 customer accounts (the "CLEC Customers").

6.     MMG was created to operate as an outbound telemarketing center. In 2009, MMG discontinued operations when such services were outsourced to an offshore telemarketing affiliate.

7.     The Debtors commenced the Chapter 11 Cases in order to facilitate a sale of their assets as a going concern (the "Sale"), which is the best interests of their customers, creditors, and employees. The CLEC Debtors have identified a stalking horse purchaser and such purchaser requires that the Sale be conducted under section 363 of the

Bankruptcy Code.  The Sale is necessary to relieve the CLEC Debtors' corporate business assets of pre-petition obligations which the CLEC Debtors are unable to repay other than from the proceeds of the Sale.  The timing of the commencement of the Chapter 11 Cases was principally dictated by the deadline unilaterally imposed by Verizon---the CLEC Debtors' most substantial ILEC provider---for, (a) the suspension of its acceptance and processing of the CLEC Debtors' new and pending service orders to add or change service, and (b) to terminate service to the CLEC Debtors.  Such actions by Verizon, if not stayed, would have resulted in the interruption of service to the CLEC Customers and prevented consummation of the Sale.

## RELIEF REQUESTED

8.       By this Motion, the Debtors seek entry of an interim and final order approving the retention of DSI and Joseph. J. Luzinski *nunc pro tunc* to the Petition Date, pursuant to the terms of an engagement letter dated April 25, 2011 (the "Engagement Letter"). A true and correct copy of the Engagement Letter is attached hereto as **Exhibit "B".**

## Services to be Provided

9.       As per the terms contained in the Engagement Letter, DSI has agreed to provide restructuring management services, including providing Mr. Luzinski as CRO. As CRO, Mr. Luzinski, along with other individuals employed by DSI, will be responsible for developing and evaluating the Debtors' strategy for these Chapter 11 Cases, and for executing this strategy and any other tasks related thereto. Specifically, the scope of DSI's services will be as follows:

      (a)     Represent the Debtors in the role of CRO in meetings, court proceedings, or as otherwise required by the Debtors in the course of their operations, restructuring or sale of assets, including making recommendations and decisions regarding the valuation, marketing and sale or other disposition of the Debtors' assets.

      (b)     Advise and assist the Debtors in the development of, and participate in, communications with the Debtors' shareholders, professionals and advisors, creditors and/or creditor's committees, regulatory agencies and other stakeholders or parties in interest to the Debtors' operations and restructuring efforts.

      (c)     Assist the Debtors in analyzing, negotiating and/or executing selected business transactions, including such matters as the restructuring or sale of assets of the Debtors and other business transactions determined to be in the best interests of the Debtors to maximize value to creditors.

      (d)     Perform such other tasks as may be agreed to by DSI and the Board of Directors of the Debtors.

## Terms of Retention

10.    DSI will be compensated for the services of Mr. Luzinski in his capacity as CRO at the rate of $525.00 per hour and other employees of DSI at hourly rates commensurate with their duties and experience at the rate customarily charged by DSI to other DSI clients.  In addition to compensation for professional services, DSI shall be reimbursed for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases.

11.    DSI will provide these services, with selected members of DSI assigned to specific roles for the benefit of the Debtors. Although the specific members of DSI who will be assigned to the Debtors' cases may vary with the tasks to be accomplished, the Engagement Letter lists certain of the personnel (along with their corresponding 2011 billing rates), who will constitute the core group from whom DSI will assemble a team

for these cases. The engagement will be managed by Joseph J. Luzinski, who will coordinate the assignments of the other consultants and be principally responsible for managing the relationship between DSI and the Debtors.

> Yale S. Bogen $395.00/hr.
> Daniel J. Stermer $395.00/hr.
> William G. King $385.00/hr.

The hourly rate ranges for other DSI consultants are:

> Senior Consultants $425.00 to $625.00/hour
> Consultants $260.00 to $430.00/hour
> Junior Consultants $125.00 to $255.00/hour

12.     Although DSI is not being retained pursuant to section 327 of the Bankruptcy Code, DSI agrees that its compensation for services, costs, charges and expenses will be in accordance with, and subject to, approval by this Court and the guidelines of the U.S. Trustee. DSI will keep time records of all work performed on these chapter 11 cases and file fee applications with this Court in accordance with the Local Rules.

13.     In the Engagement Letter, the Debtors agree to indemnify DSI and each and every one of the personnel employed by it who work on the Debtors' chapter 11 cases, as well as DSI officers, directors, employees and agents, from and against any and all claims, liability, loss, costs, damage or expense (including reasonable attorneys' fees) asserted against it or any of its individual personnel, or incurred by DSI or its personnel, by reason of or arising out of the Engagement Letter or performance under the Engagement Letter or any related transactions, except where caused by the willful misconduct, dishonesty, fraudulent act or omission or gross negligence of any of the DSI

personnel, officers, directors, employees or agents. Such indemnification shall be effectuated, whether or not any such indemnitee is separately insured, by insurance provided by the Debtors in accordance with this letter, or otherwise.

**DSI's Qualifications**

14.     DSI and its professionals and employees are highly qualified and experienced in providing restructuring management servicers. For more than three decades, DSI has been providing well-respected restructuring management services. DSI has specific and extensive experience in the banking and the financial services industry and its core competencies include providing management services and advising debtors in chapter 11. Mr. Luzinski possesses the requisite qualifications and experience necessary to serve as CRO. He has more than 20 years of experience in the chapter 11 process and in providing restructuring management services. Mr. Luzinski's restructuring and bankruptcy experience includes serving as: (i) the chapter 11 trustee to a regional shopping center; (ii) the chapter 7 trustee to a large, complex personal bankruptcy estate; (iii) advisor to the chapter 11 trustee to a large law firm; (iv) CRO to a marketer and distributor of branded products in the automotive aftermarket; (v) the chapter 11 trustee for 2 separate operating automobile dealership Debtors; (vi) the CRO to a watch manufacturer and jewelry distributor and related entities in operating chapter 11 proceedings; (vii) the chapter 7 trustee proceeding involving individual debtors involving questions of applicability of exemptions and dischargability; (viii) the chapter 11 and then chapter 7 trustee for a wholesaler of rare and foreign coins; and (ix) CEO of a commercial airline under its chapter 11 plan.  Mr. Luzinski also was actively involved on

behalf of the chapter 7 trustee in the administration of the estate of Southeast Banking Corporation from April of 1992 to April of 1998.

## BASIS FOR RELIEF

15.    The Motion seeks to retain DSI and Mr. Luzinski pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b), in conjunction with sections 1107(a) and 1108 permits a debtor-in-possession to "use, sell or lease, other than in the ordinary course of business property of the estate." 11 U.S.C. § 363(b)(1).   Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

16.    Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to §363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g., In re Gulf States, Steel, Inc.* 285 B.R. 497 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996)(citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Delaware & Hudson R.R. Co.,* 124 B.R. 169, 176 (D. Del. 1991)(courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*; 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as

distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

17.    It is in the Debtors' business judgment that the retention of DSI and Mr. Luzinski will provide the estate and its creditors with the professional experience and transparency necessary to effect a successful reorganization. The Debtors are faced with an extremely precarious set of circumstances, the solution to which will require the knowledge management of individuals with extensive experience in chapter 11 reorganizations.

18.    In an attempt to resolve many of these issues and to facilitate these Chapter 11 Cases, the CLEC Debtors have negotiated a sale of substantially all of their assets to a third-party purchaser. The Debtors acknowledge that they do not have the requisite bankruptcy experience to navigate through chapter 11.  Moreover, the intended purchaser of the CLEC Debtors' assets has required – and the Debtors concur - that a CRO be installed to ensure that the CLEC Debtors meet their postpetition obligations.

19.    In light of the foregoing, the Debtors submit that it is most advantageous to the estates and their creditors for DSI and Mr. Luzinski to be appointed as CRO to the Debtors. Mr. Luzinski and DSI have the qualifications and requisite experience in chapter 11 cases to efficiently handle these matters on behalf of the Debtors.

## Interim and Final Relief Requested

20.    Bankruptcy Rule 6003 provides that, except to the extent that relief is necessary to avoid immediate and irreparable harm, the Court shall not, within twenty-one (21) days after the filing of the voluntary petition, grant relief regarding a motion to

use or otherwise incur an obligation regarding property of the estate. As discussed above, the Debtors submit that, absent engagement of DSI as of the Petition Date, the Debtors will suffer immediate and irreparable harm, and need to preserve the going concern value of their assets for the benefit of creditors. Therefore, pursuant to Bankruptcy Rule 6003, interim relief is appropriate pending final approval of this Application.

WHEREFORE, the Debtors respectfully request that the Court enter an interim order, substantially in the form attached hereto as **Exhibit "C"**, and a final order, substantially in the form attached hereto as **Exhibit "D"**, granting the relief requested in this Motion, and such other and further relief as is just and proper.

Dated:  May 1, 2011

Respectfully submitted,
BILZIN   SUMBERG   BAENA
PRICE & AXELROD LLP
*Proposed Counsel for the Debtors*
1450 Brickell Avenue, Suite 200
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/  Scott L. Baena _____

Scott L. Baena
Fla. Bar No. 186445
sbaena@bilzin.com
Jason Z. Jones
Fla. Bar No. 186554
jjones@bilzin.com
Jeffrey I. Snyder
Florida Bar No. 21281
jsnyder@bilzin.com

# Exhibit "A"
# Luzinski Declaration

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                                      **Case Nos. 6:11-bk-06493**
                                                            **through 6:11-bk-06497**

**CORDIA COMMUNICATIONS CORP.,**                            **Chapter 11**
**et al.[1],**

        **Debtors.**                                        **Joint Administration**
                                                            **Request Pending**

_____/

**DECLARATION OF JOSEPH J. LUZINSKI IN SUPPORT OF THE DEBTORS'
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING
EMPLOYMENT AND RETENTION OF DEVELOPMENT SPECIALISTS, INC.
AND JOSEPH J. LUZINSKI AS CHIEF RESTRUCTURING OFFICER TO THE
<u>DEBTORS, NUNC PRO TUNC TO THE PETITION DATE</u>**

        I, Joseph J. Luzinski, declare and state as follows pursuant to 28 U. S. C. § 1746:

        1.        I am a Senior Vice President with Development Specialists, Inc. ("<u>DSI</u>"), a

management and advisory services firm with an office located, among other locations, at

200 South Biscayne Boulevard, Suite 1818, Miami, Florida 33131.  I submit this

Declaration on behalf of myself and DSI (the "<u>Luzinski Declaration</u>") and in support of

the Debtors' Motion for Entry of Interim and Final Orders Authorizing Employment and

Retention of Development Specialists, Inc. and Joseph J. Luzinski as Chief Restructuring

Officer to the Debtors, Nunc Pro Tunc to the Petition Date.  Except as otherwise noted, I

have personal knowledge of the matters set forth herein.

---

[1] The last four digits of the taxpayer identification number for each of the debtors seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662].

2.     DSI specializes in such areas as corporate finance, turnaround consulting, forensic accounting, and litigation support to distressed, insolvent, and reorganizing business.

## DISINTERESTEDNESS AND ELIGIBILITY

3.     Before entering into the Engagement Letter with the Debtors dated April 25, 2011, neither DSI nor I had any connection with the Debtors.

4.     In connection with the preparation of this Declaration, DSI's professionals conducted a review of its professional contacts with the Debtors, their affiliates, and other parties in interest that were reasonably known to us.  Our review, completed under my supervision, consisted of queries of an internal computer database containing names of individuals and entities that are present or recent former clients of DSI in order to identify potential relationships. DSI's search included the following types of entities: the Debtors, the Debtors' directors and officers, secured lenders, significant creditors, including the largest 20 unsecured creditors filed with the Court, among others. A listing of the parties reviewed is reflected on **Exhibit I** to this Declaration. A summary of such relationships that DSI identified during this process is set forth on **Exhibit II** to this Declaration. If any new relevant facts or relationships are discovered or arise, I will promptly advise the Court.

5.     From the results of such review, I was not made aware of any conflicts of interest or additional relationships that I believe would preclude us from performing our services. Except as disclosed herein, based on the results of its review of parties-in-interest associated with the Debtors, DSI does not have a relationship with any of the parties identified on Exhibit I in matters related to these proceedings. DSI has provided

and could reasonably be expected to continue to provide services unrelated to the Debtors' cases for the various entities shown on Exhibit II. DSI's assistance to these parties has been related to providing various financial, restructuring, litigation support and/or engineering and scientific investigation consulting services. To the best of my knowledge, no services have been provided to the parties in- interest that involve their rights in the Debtors' cases, nor does DSI's involvement in this case compromise its ability to continue such consulting services.

6.      Further, as part of its diverse practice, DSI appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. Also, DSI has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in this proceeding. In addition, DSI has in the past, may currently and will likely in the future be working with or against other professionals involved in this case in matters unrelated to the Debtors and this case. Based upon DSI's current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors in matters upon which DSI is to be employed, and none are in connection with this case.

7.      DSI does not believe it is a "Creditor" of the Debtors within the meaning of Bankruptcy Code section 101(10). Further, neither I nor any other DSI partner or principal is a holder of any shares of any of the Debtors' stock.

8.    Based on the results of the relationship search conducted to date as described above, DSI has no known significant connection to the Debtors, their creditors, equity security holders, other parties-in-interest (as reasonably known to us) or their respective attorneys, except as disclosed or otherwise described herein. Further, to the best of my knowledge, no one involved in this case, or in DSI's practice generally, has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

9.    As such, to the best of my knowledge, and other than DSI's status as Chief Restructuring Officer of the Debtor, DSI is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), in that DSI and its employees:

    a.   Are not creditors, equity security holders or insiders of the Debtors;

    b.   Were not, within two (2) years before the date of filing of the Debtors' Chapter 11 petitions, a director, officer, or employee of the Debtors; and

    c.   Based upon the results of the relationship search described above, do not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason

In addition, to the best of my knowledge and based upon the results of the relationship search described above, DSI neither holds nor represents an interest adverse to the Debtors within the meaning of Bankruptcy Code section 327(a).

10.     It is DSI's policy and intent to update and expand its ongoing relationship search for additional parties in interest. If any new relevant facts or relationships are discovered or arise, DSI will promptly file a supplemental disclosure in the same manner as an estate professional employed pursuant to section 327 of the Bankruptcy Code a would file under Bankruptcy Rule 2014(a) and advise the Court promptly.

## PROFESSIONAL COMPENSATION

11.     Although DSI is not being retained pursuant to section 327 of the Bankruptcy Code, DSI agrees that its compensation for services, costs, charges and expenses will be in accordance with, and subject to, approval by this Court and the guidelines of the U.S. Trustee. DSI will keep time records of all work performed on these chapter 11 cases and file fee applications with this Court in accordance with the Local Rules[2].

12.     DSI will be compensated for the services of Mr. Luzinski in his capacity as CRO at the rate of $525.00 per hour and other employees of DSI at hourly rates commensurate with their duties and experience at the rate customarily charged by DSI and other DSI clients, subject to reasonableness.   In addition to compensation for professional services, DSI shall be reimbursed for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases.

13.     No commitments have been made or received by DSI, nor any partner or employee associate thereof, as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code. DSI has no

---

[2] DSI and the Debtors did enter into an Engagement Letter dated April 25, 2011, pursuant to which DSI did perform certain task prior to the filing of the Debtors' petitions, did receive a retainer and paid for professional services performed pre-petition, and will change its client/matter coding so as to create a new client/matter for all post-petition professional services performed.

agreement with any other entity to share with such entity any compensation received by

DSI in connection with these chapter 11 cases.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _May 1_ , 2011.

_____
Joseph J. Luzinski

# Exhibit I

# LISTING OF PARTIES REVIEWED

I.      Debtors

      Cordia Communications Corp.
      My Tel Co., Inc.
      Northstar Telecom, Inc.
      Cordia Communications Corp. of Virginia
      Midwest Marketing Group, Inc.

II.     Officers and Directors

      Kevin Griffo
      Wesly Minella
      Gandolfo Verra

III.    Secured Creditor(s)

      Thermo Credit, LLC

IV.     Unsecured Creditors

      Verizon Services Corp.
      Verizon New England, Inc.
      Verizon New York, Inc.
      Verizon Pennsylvania, Inc.
      Verizon North, Inc.
      Verizon Maryland, Inc.
      Verizon Virginia, Inc.
      Verizon South, Inc.
      Qwest
      Paetec Communications, Inc.
      Affinity Network (ANI)
      Onecom
      Gar Shing Realty Corp.
      Level 3 Communications, LLC
      VOEX, Inc.
      Covad Communications
      Direct TV, Inc.

   iBasis, Inc.
   McLeodUSA
   Billsoft, Inc.
   Voicelog
   Global Crossing
   Datora Europa
   Sales Verification, LLC
   Cogent Communications, Inc.
   Communications Data Group
   Sansay, Inc.
   The Verification Company
   Thomson Reuters
   The 20 largest creditors as filed with the Court

V.  Professionals

   Bilzin Sumberg Baena Price & Axelrod, LLP
   Trustee Services, Inc.

VI.  Equity Holders

   Cordia Corporation

VII.  Other

   Admit Capital, LLC (prospective buyer)

# Exhibit II

# ADDITIONAL DISCLOSURES RELATED TO PARTIES

I.       Debtors

         None

II.      Officers and Directors

         None

III.     Secured Creditor

         None

IV.      Unsecured Creditors

         None

V.       Professionals

         None

VI.      Equity Holders

         None

VII.     Other

         None

# Exhibit "B"

# Engagement Letter

**DSI**® **Development Specialists, Inc.**

Advisory and Fiduciary Services • Corporate Restructuring and Workouts • Interim Management • Insolvency Services

April 25, 2011

Mr. Kevin Griffo
President & CEO
Cordia Corp.
13275 West Colonial Drive
Winter Garden, Florida 34787

Re:    Development Specialists, Inc. ("DSI")
       Retention and Letter of Engagement

Dear Mr. Griffo:

This letter will serve as our firm's written agreement to provide Cordia Corp. and Cordia Communications, Corp., My Tel Co, Inc., Northstar Telecom, Inc., Cordia Communications Corp of Virginia, Cordia Prepaid Corp. and Cordia Phils, Inc. (collectively, the "Companies") with management and consulting services related to their current restructuring endeavors.  DSI is substantially involved in all types of restructurings, both in and out of Court, on a daily basis throughout the nation.  As a customary part of our services, we often provide key management personnel to enterprises who are restructuring, and from time to time we will designate certain of our firm's personnel, upon the request of the company and agreement by both parties, to either act in managerial capacities or to serve in the positions of either a Director or an Officer, as the need may arise during the course of a restructuring.

It is our understanding that as a part of the services DSI is to provide the Companies under this agreement, and in addition to the other consulting services to be provided by DSI, DSI will agree to the appointment of one of its personnel, Joseph J. Luzinski, to serve as the Chief Restructuring Officer of the Companies.  Mr. Luzinski, along with the others from our firm who will assist him, will undertake the following responsibilities and duties:

1.  Represent the Companies in the role of Chief Restructuring Officer in meetings, court proceedings, or as otherwise required by the Companies in the course of their operations, restructuring or sale of assets, including making recommendations and decisions regarding the valuation, marketing and sale or

MIAMI
200 South Biscayne Boulevard, Suite 1818  •  Miami, Florida 33131-2329  •  Telephone: 305.374.2717  •  Fax: 305.374.2718  •  www.dsi.biz

NEW YORK  •  LOS ANGELES  •  CHICAGO  •  PHILADELPHIA  •  BOSTON  •  SAN FRANCISCO  •  COLUMBUS  •  LONDON

Mr. Kevin Griffo
April 25, 2011
Page 2

other disposition of the Companies' assets.

2. Advise and assist the Companies in the development of, and participate in, communications with the Companies' shareholders, professionals and advisors, creditors and/or creditor's committees, regulatory agencies and other stakeholders or parties in interest to the Companies' operations and restructuring efforts.

3. Assist the Companies in analyzing, negotiating and/or executing selected business transactions, including such matters as the restructuring or sale of assets of the Companies and other business transactions determined to be in the best interests of the Companies to maximize value to creditors.

4. Perform such other tasks as may be agreed to by DSI and the Board of Directors.

All work performed by DSI shall be deemed performed for the Companies.

When one or more representatives of DSI become officer(s) of the Companies, the Companies will provide Directors and Officers insurance, in amounts and form satisfactory to DSI, naming such representatives as named insureds.

As the Companies are contemplating a filing under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), the Companies shall seek approval from the United States Bankruptcy Court (the "Bankruptcy Court") to retain Mr. Luzinski as Chief Restructuring Officer and DSI as Restructuring Advisors. DSI may be requested to provide other of its employees to act as officers of the Companies. Any such request shall be made in writing and subject to approval via any process ordered by the Bankruptcy Court as part of DSI's retention as Restructuring Advisors. These individuals will remain as DSI employees during the term of this engagement. Specifically, the parties intend that an independent contractor relationship will be created by this agreement. Employees of DSI are not to be considered employees of the Companies, and are not entitled to any of the benefits that the Companies provide for employees, unless further written modification is made to this retention agreement.

DSI will be compensated for the services of Mr. Luzinski by billing the Companies periodically for the services of the CRO at the rate of $525.00 per hour and other employees of DSI at hourly rates commensurate with their duties and experience and at the rate customarily charged by DSI and other DSI clients.

DSI will provide these services, with selected members of DSI assigned to specific roles for the benefit of the Companies. Although the specific members of our



Mr. Kevin Griffo
April 25, 2011
Page 3

staff who will be assigned to this particular project may vary with the tasks to be accomplished, we have listed below certain of the personnel (along with their corresponding 2011 billing rates), who will constitute the core group from whom DSI will assemble a team for this matter.  Others, at regular hourly rates, may also be chosen for specific duties and their identities, backgrounds and rates will be discussed with you as they are assigned to this engagement.  The engagement will be managed by Joseph J. Luzinski, who will coordinate the assignments of the other consultants and be principally responsible for managing the relationship between DSI and the Companies.

| | |
|---|---|
| Yale S. Bogen | $395.00/hr. |
| Daniel J. Stermer | $395.00/hr. |
| William G. King | $385.00/hr. |

The hourly rate ranges for other DSI consultants are:

| | |
|---|---|
| Senior Consultants | $425.00 to $625.00/hour |
| Consultants | $260.00 to $430.00/hour |
| Junior Consultants | $125.00 to $255.00/hour |

These rates are adjusted as of January 1st of each year to reflect advancing experience, capabilities, and seniority of our professionals as well as general economic factors.

In addition to the fees, our billing reports reflect reasonable out-of-pocket expenses incurred in connection with our work in this matter, including without limitation, airfare (at coach fare, unless such travel is transcontinental or international, in which case such travel shall be in business class, if available), lodging, rental cars, meals, taxi and other ground transportation, long distance calls, delivery services, postage and photocopying, as well as other attendant costs that we may reasonably incur in connection with this matter.

To commence work under this Agreement, DSI shall immediately be advanced a retainer of $75,000.00.  This Agreement shall be presented to the Bankruptcy Court for approval.  DSI agrees to be compensated for its services and the costs, charges and expenses referred to in this Agreement in accordance with, and subject to, the conditions of such approval by the Bankruptcy Court, including without limitation the guidelines of the U.S. Trustee and approval of DSI's fees, costs, charges and expenses by the Bankruptcy Court.

The Companies acknowledge that all advice (written or oral) given by DSI, in the capacity of Mr. Luzinski or other members of DSI serving as officers of the Companies or otherwise in connection with DSI's engagement, is intended solely for the benefit and use of the Companies in considering the transaction(s) to which it relates, and that no



Mr. Kevin Griffo
April 25, 2011
Page 4

third party is entitled to rely on any such advice or communication.  DSI will in no way be deemed to be providing services for any person not a party to this letter agreement.

This Agreement may be terminated for cause by the parties upon ten (10) days prior written notice and subject to Bankruptcy Court review and approval.  The Companies will continue to be responsible for reasonable out-of-pocket costs, including, but not limited to, travel as may be required to conclude the engagement following notification.

DSI agrees that all information not publicly available that is received by DSI from the Companies, in connection with this engagement or that is developed during this engagement, will be treated confidentially and will not be disclosed by DSI, except as required by Court order or other legal process, or as may be authorized by the Companies.  DSI shall not be required to defend any action to obtain an order, or to defend any other legal process, requiring disclosure of such information, but shall instead give prompt notice of any such action to the Companies, so that the Companies may seek appropriate remedies, including a protective order.

The Companies acknowledge that they are hiring DSI to assist and advise them in business planning and operations.  DSI's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA or other such state and national professional bodies.

The Companies shall by execution or acceptance of this letter,  indemnify DSI and each and every one of the personnel employed by it who work on this particular project, as well as DSI officers, directors, employees and agents, from and against any and all claims, liability, loss, costs, damage or expense (including reasonable attorneys' fees) asserted against it or any of its individual personnel, or incurred by DSI or its personnel, by reason of or arising out of this Agreement or performance under this Agreement or any related transactions, except where caused by the willful misconduct, dishonesty, fraudulent act or omission or gross negligence of any of the DSI personnel, officers, directors, employees or agents.  Such indemnification shall be effectuated, whether or not any such indemnitee is separately insured, by insurance provided by the Companies in accordance with this letter, or otherwise.

The Companies agree not to solicit, recruit or hire any employees or agents of DSI for a period of two years subsequent to the completion and/or termination of this agreement.

By approving this retention letter, the Companies specifically waive any objection, or standing to object, to the retention, in matters unrelated to the Companies



Mr. Kevin Griffo
April 25, 2011
Page 5

of DSI by banks or other institutional lenders or debt holders, who are or whose affiliates are lenders to the Companies, or bank groups which include banks who are or whose affiliates are lenders to the Companies.

The provisions of this Agreement relating to indemnification, to the non-solicitation or hiring of DSI employees, and all other provisions necessary to the enforcement of the intent of this agreement will survive the termination or expiration of this Agreement.

This Agreement terminates and supersedes all prior written or oral agreements between DSI and the Companies and encompasses all of the terms and conditions between the Companies and DSI concerning DSI's engagement.  If you are in agreement with the various terms and conditions of this proposal, please indicate your acceptance of this proposal on behalf of the Companies through the execution of an original copy of this agreement, returning one of the fully executed agreements to our Miami office.

Should you have any questions, comments or concerns, or require additional clarification of information, please do not hesitate to contact me at your convenience and at your earliest opportunity.

Very truly yours,

DEVELOPMENT SPECIALISTS, INC.

*Joseph J. Luzinski*

Joseph J. Luzinski

/jlv



Mr. Kevin Griffo
April 25, 2011
Page 6


**ACKNOWLEDGED AND AGREED TO:**


Cordia Communications Corp.
And Affiliates



By: _____
    Kevin Griffo – President & CEO

Date: _____



Mr. Kevin Griffo
April 25, 2011
Page 6


**ACKNOWLEDGED AND AGREED TO:**


Cordia Communications Corp.
And Affiliates


By: _____
~~Kevin Griffo – President & CEO~~ Wesly Minella, Secretary

Date: ____4/25/11_____

**DSI** Development Specialists, Inc.

Mr. Kevin Griffo
April 25, 2011
Page 6


**ACKNOWLEDGED AND AGREED TO:**


Cordia Communications Corp.
And Affiliates


By: _____
~~Kevin Griffo – President & CEO~~  Wesly Minella, Secretary

Date: ___4/25/11_____

**DSI** Development Specialists, Inc.

# Exhibit "C"

# Interim Order

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case Nos. 6:11-bk-06493 through 6:11-bk-06497 |
| **CORDIA COMMUNICATIONS CORP., et al.**[1], | **Chapter 11** |
| **Debtors.** | **Joint Administration Request Pending** |

_____/

**INTERIM ORDER GRANTING DEBTORS' MOTION FOR AN ORDER
AUTHORIZING EMPLOYMENT AND RETENTION OF DEVELOPMENT
SPECIALISTS, INC AND JOSEPH J. LUZINSKI AS CHIEF RESTRUCTURING
OFFICER TO THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE**

THIS CAUSE came for hearing before the Court on May __, 2011 at __ a.m./p.m.

in Orlando, Florida upon consideration of the motion (the "Motion")[2] [ECF No. __] of

the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for

entry of an Order authorizing the employment and retention of Development Specialists,

Inc. ("DSI") to provide restructuring and management services, including the

appointment of Joseph J. Luzinski as Chief Restructuring Officer ("CRO") to the Debtors

on an interim basis, *nunc pro tunc* to the Petition Date (as defined in the Motion) , all as

more fully set forth in the Motion; and the Court having subject matter jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and

---

[1] The last four digits of the taxpayer identification number for each of the debtors seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662].
[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. §

157(b); and the Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 & 1409; and the Court having found that

the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors, and other parties in interest; and the Debtors having provided appropriate

notice of the Motion and the opportunity for a hearing on the Motion under the

circumstances; and the court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before the Court (the

"Hearing"); and the Court having determined that the legal and factual bases set forth in

the Motion and at the Hearing establish just cause for the relief granted herein; and upon

all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefore, it is hereby:

> **ORDERED** that:

> The Motion is **GRANTED** on an interim basis**.**

> 1.    The Debtors are authorized, effective as of the Petition Date, to: (i)

employ and retain DSI on the terms set forth in the Engagement Letter dated April 25,

2011 (the "Engagement Letter") annexed as **Exhibit B** to the Motion; and (ii) designate

Joseph J. Luzinski as Chief Restructuring Officer to the Debtors.

> 2.    DSI shall be compensated as set forth in the Engagement Letter.

Specifically, Mr. Luzinski will be compensated at the rate of $525 per hour, and other

personnel of DSI will be paid at the rates specified in the Engagement Letter. In addition

to compensation for professional services rendered by DSI's personnel, DSI will seek

reimbursement for reasonable and necessary expenses incurred in connection with this

chapter 11 case.

3.      The Court shall conduct a final hearing on the Application

_____, 20__ at _____m., prevailing Eastern Time, (the "Final Application

Hearing") at 135 W. Central Boulevard, Room _____, Orlando, FL 32801. Any party in

interest objecting to the relief sought in the Application shall serve and file written

objections, which objections shall be served upon (a) the Debtors, c/o Cordia

Communications Corp., 13275 W. Colonial Drive, Winter Garden Florida 34787, Attn:

Kevin Griffo; (b) Bilzin Sumberg Baena Price & Axelrod LLP, 1450 Brickell Avenue.,

Suite 2300, Miami, FL 33131, Attn: Jason Z. Jones, Esq.; (c) the Office of the United

States Trustee for the Middle District of Florida, and (d) counsel to an Official Unsecured

Creditors Committee, if one has been appointed (collectively, the "Notice Parties") and

shall be filed with the Clerk of the United States Bankruptcy Court, Middle District of

Florida, to allow actual receipt by the foregoing no later than _____ at

_____, prevailing Eastern Time.

4.      DSI shall be paid in accordance with, and subject to, approval by this

Court and the guidelines of the U.S. Trustee.

5.      To the extent that this Order is inconsistent with any prior order or

pleading with respect to the Motion in these cases, the terms of this Order shall govern.

6.      The Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

**DONE AND ORDERED** on _____.


_____

United States Bankruptcy Judge

Copies furnished to:

Jason Z. Jones, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

**Exhibit "D"**

**Final Order**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case Nos. 6:11-bk-06493<br>through 6:11-bk-06497 |
| **CORDIA COMMUNICATIONS CORP.,<br>et al.[1],** | **Chapter 11** |
| **Debtors.** | **Joint Administration<br>Request Pending** |
| _____/ | |

### FINAL ORDER GRANTING DEBTORS' MOTION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF DEVELOPMENT SPECIALISTS, INC AND JOSEPH J. LUZINSKI AS CHIEF RESTRUCTURING OFFICER TO THE DEBTORS, NUNC PRO TUNC TO THE PETITION DATE

THIS CAUSE came for hearing before the Court on May __, 2011 at __ a.m./p.m. in Orlando, Florida upon consideration of the motion (the "Motion")[2] [ECF No. __] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an Order authorizing the employment and retention of Development Specialists, Inc. ("DSI") to provide restructuring and management services, including the appointment of Joseph J. Luzinski as Chief Restructuring Officer ("CRO") to the Debtors *nunc pro tunc* to the Petition Date (as defined in the Motion) , all as more fully set forth in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court

---

[1]        The last four digits of the taxpayer identification number for each of the debtors seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662].
[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 & 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is hereby:

ORDERED that:

1.      The Motion is **GRANTED.**

2.      The Debtors are authorized, effective as of the Petition Date, to: (i) employ and retain DSI on the terms set forth in the Engagement Letter dated April 25, 2011 (the "Engagement Letter") annexed as **Exhibit B** to the Motion; and (ii) designate Joseph J. Luzinski as Chief Restructuring Officer to the Debtors.

3.      DSI shall be compensated as set forth in the Engagement Letter. Specifically, Mr. Luzinski will be compensated at the rate of $525 per hour, and other personnel of DSI will be paid at the rates specified in the Engagement Letter.  In addition to compensation for professional services rendered by DSI's personnel, DSI will seek reimbursement for reasonable and necessary expenses incurred in connection with these

chapter 11 cases.

4.      To the extent that this Order is inconsistent with any prior order or

pleading with respect to the Motion in these cases, the terms of this Order shall govern.

5.      DSI shall be paid in accordance with, and subject to, approval by this

Court and the guidelines of the U.S. Trustee.

6.      The Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order.

**DONE AND ORDERED** on _____.


_____

United States Bankruptcy Judge

Copies furnished to:

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131