**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case Nos.: 6:11-bk-06493 through 6:11-bk-06497 |
| CORDIA COMMUNICATIONS CORP., et al.[1] | Chapter 11 |
| Debtors. _____ / | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR
ENTRY OF AN ORDER AUTHORIZING USE OF
ALLEGED CASH COLLATERAL**

*Expedited Hearing Requested Pursuant to Administrative Order Establishing Initial Procedures in Chapter 11 Cases Filed in the United States Bankruptcy Court for the Middle District of Florida*

Cordia Communications Corp. ("CCC"), Cordia Communications Corp. of Virginia ("CCCVA"), My Tel Co., Inc. ("MTC"), Midwest Marketing Group, Inc. ("MMG"), and Northstar Telecom, Inc. ("NST"; NST, CCC, CCCVA, MTC and MMG being collectively referred to as the "Debtors"), by and through undersigned counsel, respectfully file their Emergency Motion for Entry of an Order Authorizing Use of Alleged Cash Collateral (the "Motion") pursuant to sections 361 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 4001(b), Local Rule 9004-2(d), and the *Administrative Order Establishing Initial Procedures in Chapter 11 Cases Filed in the United States Bankruptcy Court for the Middle District of Florida*. The Debtors respectfully request, pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(2), that the Court conduct a

---
[1] The last four digits of the taxpayer identification number for each of the debtors which are seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662]. The mailing address for the Debtors is 13275 W. Colonial Drive, Winter Garden, FL 34787.

preliminary hearing on the Motion at the earliest possible setting and a subsequent final hearing no earlier than fourteen days from the date hereof. In support of the Motion, the Debtors respectfully represent as follows:

## CONCISE STATEMENT OF RELIEF REQUESTED PURSUANT TO FED. R. BANKR. P. 4001(b)(1)(B)

By this Motion, the Debtors request entry of an order providing the Debtors with (a) access to payments received from customers and in respect of the Debtors' receivables that are presently in or that may be subsequently deposited into a Lockbox,[2] Collections Accounts, and a Contingency Account presently under the control of Thermo or its lockbox processor, Klik.

Although the Debtors are not prepared to concede that the foregoing funds constitute cash collateral, the Debtors, as a precaution, are requesting authority to utilize such funds in accordance with the Budget and Proposed Order in order to continue to operate its business so as to preserve the value of its enterprise pending a sale pursuant to Section 363 of the Bankruptcy Code.

Although the Debtors are likewise unwilling to concede that Thermo holds any interest entitled to adequate protection, the Debtors nevertheless are providing adequate protection to Thermo by offering a replacement lien to Thermo on post-petition property of the Debtors with the same validity, priority, and extent as the interest held by Thermo on the Petition Date, if any. In addition, the provisions of the Proposed Order include additional protections such as weekly reporting.

---

[2] Capitalized terms appearing in this Concise Statement of Relief Requested are defined in the body of the Motion.

Absent the relief requested herein, the Debtors will suffer immediate and irreparable harm, as they will likely cease operations, scuttling the Sale and resulting in the disconnection of 56,000 customers' telephone service.

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.  The statutory bases and local procedures for the relief requested herein are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b), Local Rule 9004-2, and Administrative Order 2009-1.

## BACKGROUND

3.  On May 1, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.  CCC, CCCVA, NST, and MTC (collectively, the "CLEC Debtors") provide telecommunications services as a competitive local exchange carrier or CLEC. As such, the CLEC Debtors offers small businesses and residential consumers bundled services that include local dial tone, unlimited domestic long distance, and unlimited feature plans by leasing a portion of the network owned by other telecommunications carriers. These leasing arrangements are controlled by multi-state, multi-year interconnection and commercial services agreements that allow the CLEC Debtors to offer telecommunications services to consumers without incurring the capital

3

expenditures associated with building its own network. Certain of the CLEC Debtors have commercial services agreements with both incumbent local exchange carriers or ILECs, including Verizon and Qwest, and non-incumbent carriers.

5. CCC currently holds licenses to operate in twenty-seven (27) states throughout the contiguous United States; CCCVA holds a license to operate in the Commonwealth of Virginia; MTC is licensed to offer local and long distance services in nine (9) states and has customers in seven (7) of those states; and, NST currently holds licenses to operate in thirteen (13) states and provides services in twelve (12) of those states. The CLEC Debtors currently have approximately 56,000 customer accounts (the "CLEC Customers").

6. MMG was created to operate as an outbound telemarketing center. In 2009, MMG discontinued operations when such services were outsourced to an offshore telemarketing affiliate.

7. The Debtors commenced the Chapter 11 Cases in order to facilitate a sale of their assets as a going concern (the "Sale"), which is in the best interests of their customers, creditors, and employees. The Debtors have identified a stalking horse purchaser and such purchaser requires that the Sale be conducted under section 363 of the Bankruptcy Code. The Sale is necessary to relieve the Debtors' core business assets of pre-petition obligations which the Debtors are unable to repay other than through the proceed of the Sale. The timing of the commencement of the Chapter 11 Cases was principally dictated by the deadline unilaterally imposed by Verizon---the CLEC Debtors' most substantial ILEC provider---for, (a) the suspension of its acceptance and processing of the CLEC Debtors' new and pending service orders to add or change service, and (b) to terminate service to the CLEC Debtors. Such actions by Verizon, if not stayed, would

have resulted in the interruption of service to the CLEC Customers and prevented consummation of the Sale.

## POTENTIAL CASH COLLATERAL

8.      As of September 21, 2007, Thermo Credit, LLC ("Thermo") and non-Debtor Cordia Corporation ("Cordia Corp.") entered to that certain Factoring and Security Agreement, as amended from time to time (the "FSA"), pursuant to which Thermo agreed to advance funds in an amount equal to 70% of the face value (the "Advance Rate") of eligible receivables of the Debtors then subject of the FSA, net of fees, reserves, and other amounts specified in the FSA.  However, importantly, none of the Debtors are party to the FSA.

9. The Advance Rate has been adjusted from time to time pursuant to various amendments to the FSA. Pursuant to the Fifth Amendment to the FSA executed on April 21, 2011, the Advance Rate is presently 60%.

10. As of April 28, 2011, $4,631,286.00 in receivables were outstanding and subject of the FSA and Thermo had advanced $2,814,255.27 (60.8%) in connection therewith.

11. Pursuant to the terms of the FSA, the Debtors are required to instruct their customers to direct payments to a lockbox (the "Lockbox") that is managed by Klik Technologies Corp. ("Klik") as lockbox processor, pursuant to a Lockbox Agreement by and among Cordia Corp., Thermo, and Klik dated as of September 25, 2007 (the "Lockbox Agreement"). Pursuant to the Lockbox Agreement, all remittances to the Lockbox are deposited daily to designated collections accounts at Wachovia Bank, N.A. (the "Collections Accounts").

12. On a weekly basis, to the extent that remittances collected exceed the Advance Rate after deducting any amounts due to Thermo under the FSA, including as reimbursement for certain uncollectible receivables, such excess amount (the "Excess Collections") is wired to Cordia Corp. from the Collections Account.

13. Pursuant to the FSA, Thermo has established a contingency account (the "Contigency Account") which, upon information and belief, was funded by Thermo with $225,000 that would have otherwise been distributed to Cordia Corp. as Excess Collections.

**RELIEF REQUESTED**

14. By this Motion, the Debtors seek an order directing that the Debtors be provided immediate access to all remittances to and funds in the Lockbox, the Collections

6

Accounts, and the Contingency Account on and after the Petition Date and authority to utilize such funds strictly in accordance with the budget attached hereto as Exhibit "A" (the "Budget") and the proposed order annexed hereto as Exhibit "B" (the "Proposed Order") in order to operate the Debtors' businesses and avoid immediate and irreparable harm to the Debtors' estates.

15. The Debtors anticipate that Thermo may claim ownership of or a security interest in remittances to and funds in the Lockbox, the Collections Accounts and the Contingency Account as of the Petition Date. The Debtors also anticipate that Thermo may claim ownership of or a security interest in all accounts receivable existing as of the Petition Date and all proceeds thereof that may be paid into the Lockbox or Collections Accounts thereafter.

16. The Debtors are not in a position to stipulate to the validity, priority, or extent of any ownership or security interest that Thermo may claim in or against any of the Debtors' receivables, any proceeds thereof, or any funds held in the Lockbox, the Collections Accounts, or the Contingency Account as of the Petition Date.[3]

17. The Debtors nevertheless require access to payments from their customers as they are received in order to maintain the critical cash flow necessary to continue operations through the closing of the Sale. As it is impractical for the Debtors to cause their customers to redirect their payments to a different location or account, the Debtors respectfully request that the Court direct Thermo and Klik to immediately deliver all payments received into the Lockbox, the Collections Accounts, and the Contingency Account after the Petition Date, to the Debtors or deposit such funds into the Debtors' operating account on their behalf.

---

[3] Indeed, the Debtors expressly reserve all of their rights, including without limitation, the right to object, challenge, or content the extend, validity, or priority of any lien, security interest, or ownership interest that Thermo or any other party may claim on or in any of the Debtors' property whatsoever.

7

18. Without conceding that Thermo has any interest in the aforementioned customer payments that is entitled to adequate protection, the Debtors nevertheless believe that continued operations will preserve the existing amount of receivables and the existing flow of payments on existing receivables, thereby providing adequate protection, if appropriate and required by the Bankruptcy Code. The alternative, a cessation of the Debtors operations and of telephone service to approximately 56,000 customers, will undoubtedly impair outstanding receivables.

19. As additional adequate protection, the Debtors are providing Thermo with post-petition replacement liens with the same validity, priority, and extent of any liens held by Thermo on the Petition Date. The terms and conditions of the Proposed Order provide further adequate protection including, among other things, regular budget-to-actual reports.

20. Pursuant to Section 363(c)(2)(B) of the Bankruptcy Code, a debtor-in-possession may use cash collateral with court approval after notice and a hearing. 11 U.S.C. § 363(c)(2)(B). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by a debtor, the Court "shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

21. As the Court is well-aware, what constitutes adequate protection is determined on a case-by-case basis. *See MBank Dallas, NA.* v. *O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-97 (10th Cir. 1987); *In re Martin,* 761 F.2d 472 (8th Cir. 1985). Simply stated, adequate protection is necessary only to the extent the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-73 (1988).

22. In the case at bar, the Court should approve the Debtors' proposed use of cash collateral because Thermo's interests in the Lockbox, Collection Accounts, Contingency Account, and accounts receivable, if any, are adequately protected by the Debtors' continued operations through the closing of the Sale. Only through continued operations can the Debtors continue to generate receivables, which will be subject to a replacement lien in favor of Thermo to the extent that Thermo held a valid interest in receivables as of the Petition Date, as well as consummate the Sale.

23. The alternative, a near-immediate cessation of the Debtors' operations will scuttle the Sale and result in the disconnection of 56,000 customers' telephone service, substantially reducing the likelihood that these customers will pay pre-petition receivables. This result will cause immediate and irreparable harm to the interests of the Debtors and of Thermo.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth above, the Debtors respectfully request that the Court enter an order (a) granting the Motion, (b) authorizing, on an interim basis at a preliminary hearing pursuant to Fed. R. Bankr. P. 4001(b), the Debtors' use of cash collateral pursuant to the Budget and Proposed Order and directing Thermo and Klik to deliver funds received on or after the Petition Date into the Lockbox, Collections

9

Accounts, and Contingency Accounts to the Debtors, (c) scheduling a final hearing, (d) authorizing at the final hearing the Debtors' use of cash collateral pursuant to the Budget and Proposed Order and directing Thermo and Klik to deliver funds received on or after the Petition Date into the Lockbox, Collections Accounts, and Contingency Accounts to the Debtors; and (e) granting such other and further relief as is just and proper.

Dated: May 1, 2011

Respectfully submitted,

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
*Proposed Counsel for the Debtors*
1450 Brickell Avenue, Suite 200
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/ Scott L. Baena
    Scott L. Baena
    Fla. Bar No. 186445
    sbaena@bilzin.com
    Jason Z. Jones
    Fla. Bar No. 186554
    jjones@bilzin.com
    Jeffrey I. Snyder
    Florida Bar No. 21281
    jsnyder@bilzin.com

# Exhibit "A"

# Budget

# Summary of Cordia Debtors
## 13 Week Cash Flow
**US$000s**

| | Notes | Week # 1<br>5/6/2011 | 2<br>5/13/2011 | 3<br>5/20/2011 | 4<br>5/27/2011 | 5<br>6/3/2011 | 6<br>6/10/2011 | 7<br>6/17/2011 | 8<br>6/24/2011 | 9<br>7/1/2011 | 10<br>7/8/2011 | 11<br>7/15/2011 | 12<br>7/22/2011 | 13<br>7/29/2011 | Ttl 13 Wks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH INFLOWS:** | | | | | | | | | | | | | | | |
| Accounts Rec.- Post Petition | | $0.0 | $0.0 | $0.0 | $467.3 | $565.6 | $587.1 | $485.2 | $589.1 | $557.7 | $584.8 | $734.5 | $539.0 | $554.8 | $5,665.0 |
| Accounts Rec.- Pre Petition | | 814.6 | 802.5 | 802.5 | 802.5 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 3,222.1 |
| Accounts Rec - CAB Post Petition | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 100.0 | 20.0 | 7.0 | 1.4 | 100.0 | 20.0 | 7.0 | 255.4 |
| Accounts Rec - CAB Pre Petition | | 1.4 | 0.0 | 100.0 | 27.0 | 1.4 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 129.8 |
| Other | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Total Cash Inflows: | | $816.0 | $802.5 | $902.5 | $1,296.8 | $567.0 | $587.1 | $585.2 | $609.1 | $564.7 | $586.2 | $834.5 | $559.0 | $561.8 | $9,272.3 |
| **CASH OUTFLOWS:** | | | | | | | | | | | | | | | |
| Operations: | | | | | | | | | | | | | | | |
| Carriers | | $0.0 | $0.0 | $0.0 | $0.0 | $278.4 | $303.1 | $295.3 | $232.0 | $304.1 | $279.7 | $296.0 | $383.0 | $256.1 | $2,627.7 |
| Rent or Lease Expense | | 37.6 | 0.0 | 0.0 | 0.0 | 17.6 | 0.0 | 0.0 | 0.0 | 10.0 | 7.6 | 0.0 | 0.0 | 0.0 | 72.8 |
| Payroll | | 92.9 | 0.0 | 92.9 | 0.0 | 92.9 | 0.0 | 92.9 | 0.0 | 92.9 | 0.0 | 92.9 | 0.0 | 92.9 | 650.3 |
| Payroll Taxes and Benefits (16%) | | 14.9 | 0.0 | 14.9 | 0.0 | 14.9 | 0.0 | 14.9 | 0.0 | 14.9 | 0.0 | 14.9 | 0.0 | 14.9 | 104.0 |
| Sales Taxes | | 101.9 | 89.8 | 89.8 | 148.3 | 70.7 | 73.4 | 60.8 | 73.6 | 69.8 | 73.0 | 91.9 | 67.3 | 69.4 | 1,079.6 |
| Commissions | | 0.0 | 0.0 | 0.0 | 0.0 | 2.0 | 0.0 | 0.0 | 0.0 | 2.0 | 0.0 | 0.0 | 0.0 | 0.0 | 4.0 |
| Telemarketing | | 0.0 | 60.0 | 60.0 | 60.0 | 60.0 | 70.0 | 60.0 | 60.0 | 60.0 | 70.0 | 60.0 | 60.0 | 60.0 | 740.0 |
| Billing | | 0.0 | 11.0 | 11.5 | 12.5 | 22.5 | 11.5 | 11.5 | 12.5 | 22.5 | 11.5 | 11.5 | 11.5 | 12.5 | 162.5 |
| Sales Tax Compliance Services | | 0.0 | 0.0 | 0.0 | 18.2 | 0.0 | 0.0 | 0.0 | 18.2 | 0.0 | 0.0 | 0.0 | 0.0 | 18.2 | 54.6 |
| Telephone | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 15.0 | 0.0 | 0.0 | 0.0 | 0.0 | 15.0 | 30.0 |
| Advertising | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Other | | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 23.0 | 299.0 |
| **Total Disbursements - Operations** | | **$270.3** | **$183.8** | **$292.1** | **$262.0** | **$581.9** | **$480.9** | **$558.4** | **$434.4** | **$599.1** | **$464.8** | **$590.1** | **$544.8** | **$562.0** | **$5,824.6** |
| Interest: | | | | | | | | | | | | | | | |
| Interest Expense/Other Fees - DIP | | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| **Total Disbursements - Interest** | | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** |
| **Cash Used for Operations and Interest** | | **$270.3** | **$183.8** | **$292.1** | **$262.0** | **$581.9** | **$480.9** | **$558.4** | **$434.4** | **$599.1** | **$464.8** | **$590.1** | **$544.8** | **$562.0** | **$5,824.6** |
| Chapter 11 Administrative Costs: | | | | | | | | | | | | | | | |
| Prof. Fees - Legal | | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 | $0.0 |
| Prof. Fees - CRO | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Claims Agent | | 0.0 | 50.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 25.0 | 0.0 | 0.0 | 0.0 | 0.0 | 75.0 |
| U. S. Trustee Fees | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 13.4 | 0.0 | 13.4 |
| Unallocated | | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 175.0 | 0.0 | 0.0 | 0.0 | 0.0 | 175.0 |
| **Total Disbursements - Ch 11** | | **$0.0** | **$50.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$0.0** | **$200.0** | **$0.0** | **$0.0** | **$13.4** | **$0.0** | **$263.4** |
| **Total Cash Disbursements** | | **$270.3** | **$233.8** | **$292.1** | **$262.0** | **$581.9** | **$480.9** | **$558.4** | **$434.4** | **$799.1** | **$464.8** | **$590.1** | **$558.2** | **$562.0** | **$6,088.0** |
| **Increase (Decrease in Cash** | | **$545.7** | **$568.7** | **$610.4** | **$1,034.8** | **($14.9)** | **$106.2** | **$26.7** | **$174.8** | **($234.4)** | **$121.4** | **$244.4** | **$0.8** | **($0.2)** | **$3,184.3** |
| **Cash Balance - Beginning** | | **$168.0** | **$713.7** | **$1,282.4** | **$1,892.8** | **$2,927.6** | **$2,912.7** | **$3,018.8** | **$3,045.6** | **$3,220.3** | **$2,985.9** | **$3,107.3** | **$3,351.7** | **$3,352.5** | **$168.0** |
| **Cash Balance - Ending** | | **$713.7** | **$1,282.4** | **$1,892.8** | **$2,927.6** | **$2,912.7** | **$3,018.8** | **$3,045.6** | **$3,220.3** | **$2,985.9** | **$3,107.3** | **$3,351.7** | **$3,352.5** | **$3,352.3** | **$3,352.3** |

# Exhibit "B"

# Proposed Order

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | Case Nos.: 6:11-bk-06493 through 6:11-bk-06497 |
| **CORDIA COMMUNICATIONS CORP., et al.**[1] | Chapter 11 |
| **Debtors.** _____/ | (Joint Administration Requested) |

**[PROPOSED] INTERIM ORDER GRANTING DEBTORS' EMERGENCY
MOTION FOR ENTRY OF AN ORDER AUTHORIZING USE OF
<u>ALLEGED CASH COLLATERAL</u>**

THIS CASE came before the Court for hearing on May ____, 2011 at _____ upon the Debtors' Emergency Motion for Entry of an Order Authorizing Use of Alleged Cash Collateral [ECF No. ___] (the "<u>Motion</u>"). The Court, having considered the Motion and the Budget attached thereto as Exhibit "A" (the "<u>Budget</u>"), the record in this matter, the arguments and presentations of counsel, the evidence presented, and the Debtors' offer of adequate protection and other terms set forth in this Interim Order (the "<u>Interim Order</u>"), finds that good cause exists to grant the relief set forth herein, that there is a reasonable likelihood that the Debtors will prevail at a final hearing, and that the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors' estates pending a final hearing. Accordingly, it is ORDERED as follows:

---

[1] The last four digits of the taxpayer identification number for each of the debtors which are seeking joint administration are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], Midwest Marketing Group, Inc. [5042], and Northstar Telecom, Inc. [9662]. The mailing address for the Debtors is 13275 W. Colonial Drive, Winter Garden, FL 34787.

1. The Motion is GRANTED to the extent set forth herein.

2. The Debtor is authorized, on an interim basis, to use cash collateral in accordance with the Budget through _____ (the "Termination Date").

3. For the purposes of this Interim Order, the foregoing authority shall authorize the Debtors to utilize all proceeds of pre- and post-petition receivables and customer payments received or deposited into the Lockbox, Collections Accounts, and Contingency Accounts (as such terms are defined in the Motion) on or after the Petition Date in accordance with the Budget and this Interim Order.

4. Thermo Credit, LLC ("Thermo") and lockbox processor Klik Technologies Corp. ("Klik") are DIRECTED to deliver to the Debtors, on a rolling basis, all customer payments received or deposited into the Lockbox, Collections Accounts or Contingency Accounts (as such terms are defined in the Motion) within 1 business day of such receipt or deposit.

5. Thermo and Klik shall provide the Debtors with daily reports reflecting all transactions and activity occurring in the Lockbox, Collections Accounts, or Contingency Account.

6. In connection with the Debtors' use of cash collateral, the Debtors, in any particular calendar month: (i) are not authorized to exceed any line item on the Budget by more than ten (15%) percent of such line item unless it receives prior written consent from Thermo; (ii) may not incur a negative variance from aggregate income (revenues less operating expenses) by more than ten (10%) percent unless it receives prior written consent from Thermo, and (iii) may not pay any prepetition obligation without a prior

order of the Court. Notwithstanding the foregoing, the Debtors may pay any fees due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) when due.

7. The Debtors shall provide to Thermo a weekly statement of actual revenues and expenditures on a cash basis and a budget-to-actual report by email to counsel for Thermo by 5:00 p.m. (EST) on Friday of the following week.

8. Thermo is granted a replacement lien on and in cash collateral, receivables, and other property owned, acquired or generated post-petition by the Debtors' continued operations solely to the extent and priority, if any, and of the same kind and nature as Thermo had, if any, prior to the filing of this bankruptcy case effective as of the Petition Date, which lien shall be deemed to be perfected as of the Petition Date, without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law.

9. To the extent that the replacement lien granted hereunder is found to be insufficient, Thermo shall be afforded the priority in payment afforded by section 507(b) of the Bankruptcy Code to the extent of any diminution in the value of its security interests, if any, after giving effect to the value, if any, of the replacement lien granted hereunder.

10. No provision of this Interim Order shall be deemed to be a determination (a) of the validity, priority, or extent of an ownership or security interest asserted by Thermo, (b) that Thermo's interests, if any, are entitled to adequate protection, or (c) that the replacement lien and other protections granted hereby are sufficient to adequately protect Thermo's interests, if any. Thermo reserves the right to object to any future

3

requests to use cash collateral and the Debtors reserve their right to demand that Thermo prove the validity, priority and extent of its alleged interests.

11. If the Court enters an order dismissing the Debtors' bankruptcy cases, converting the cases to cases under chapter 7, or appointing a chapter 11 trustee, such order shall constitute an event of default under the terms of this Order, and the Debtors' authorization to use cash collateral provided herein shall be automatically revoked without the need for further hearing.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

13. A final hearing shall be held in connection with the Motion on _____ at the United States Bankruptcy Court, 135 W. Central Boulevard, Orlando, Florida 32801.

**DONE AND ORDERED** on _____.

_____
_____
United States Bankruptcy Judge