In re:                                             Case Nos. 6:11-bk-06493
                                                   through 6:11-bk-06497

**CORDIA COMMUNICATIONS CORP.,**          **Chapter 11**
**et al.,**[1]

     **Debtors.**                                    **Jointly Administered**
_____/

### APPLICATION BY CLEC DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SOURCE CAPITAL GROUP, INC. AS INVESTMENT BANKER TO THE CLEC DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

*Expedited Hearing Respectfully Requested on May 18, 2011 at 3:00 p.m.*

Cordia Communications Corp. ("CCC"), Cordia Communications Corp. of Virginia ("CCCVA"), My Tel Co., Inc. ("MTC"), and Northstar Telecom, Inc. ("NST", collectively, the "CLEC Debtors"), by and through undersigned counsel, submit this application (the "Application"), pursuant to sections 327(a) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code" ), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Rules for the Bankruptcy Court for the Middle District of Florida (the "Local Rules"), for the entry of an order authorizing the CLEC Debtors to retain and employ Source Capital Group, Inc. ("Source") *nunc pro tunc* to the Petition Date (defined herein), as investment banker for the CLEC Debtors in connection with the above-captioned chapter 11 cases (the "Chapter 11 Cases").  In support of this Application, the CLEC Debtors submit and rely upon the verified statement of Vik Grover,

---

[1]     The last four digits of the taxpayer identification number for each of the CLEC Debtors are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], and Northstar Telecom, Inc. [9662].

Managing Director of Source (the "Grover Verified Statement"), attached hereto as **Exhibit "A"**. In further support of this Application, the CLEC Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Application is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      The statutory predicates for the relief requested herein are sections 327(a), 330 and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Rule 2016-1.

## BACKGROUND

3.      On May 1, 2011 (the "Petition Date"), each of the CLEC Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.[2] The CLEC Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      The CLEC Debtors provide telecommunications services as a competitive local exchange carrier or CLEC. As such, the CLEC Debtors offer small businesses and residential consumers bundled services that include local dial tone, unlimited domestic long distance, and unlimited feature plans by leasing a portion of the network owned by other telecommunications carriers. These leasing arrangements are controlled by multi-state, multi-year interconnection and commercial services agreements that allow the CLEC Debtors to offer telecommunications services to consumers without incurring the capital expenditures associated with building its own network. Certain of the CLEC Debtors have commercial services agreements with both

---

[2] Midwest Marketing Group, Inc. ("MMG") an affiliate of the CLEC Debtors also filed its Bankruptcy Case on May 1, 2011, is being jointly administered with the CLEC Debtors' cases. MMG and the CLEC Debtors are collectively referred to as the "Debtors".

incumbent local exchange carriers or ILECs, including Verizon and Qwest, and non-incumbent carriers.

5.      CCC currently holds licenses to operate in twenty-seven (27) states throughout the contiguous United States; CCCVA holds licenses to operate in one (1) state; MTC is licensed to offer local and long distance services in nine (9) states and has customers in seven (7) of those states; and, NST currently holds licenses to operate in thirteen (13) states and provides services in twelve (12) of those states. The CLEC Debtors currently have approximately 56,000 customer accounts (the "CLEC Customers").

6.      The CLEC Debtors commenced the Chapter 11 Cases in order to facilitate a sale of their assets as a going concern (the "Sale") for the benefit of their customers, creditors, and employees. The Sale is necessitated by the CLEC Debtors' inability to continue to pay their debts as they come due, including tax and vendor obligations. The timing of the commencement of the Chapter 11 Cases was principally dictated by the deadline unilaterally imposed by Verizon---the CLEC Debtors' most substantial ILEC provider---for, (a) the suspension of its acceptance and processing of the CLEC Debtors' new and pending service orders to add or change service, and (b) to terminate service to the CLEC Debtors. Such actions by Verizon would have resulted in the interruption of service to the CLEC Customers and prevented consummation of the Sale.

## RELIEF REQUESTED

7.      By this Application, the CLEC Debtors request that this Court enter an order, substantially in the form attached hereto as **Exhibit "B"**, (i) authorizing the CLEC Debtors to retain and employ Source as their investment banker, *nunc pro tunc* to the Petition Date, pursuant to the terms of the engagement letter, dated April 29, 2011, attached hereto as **Exhibit**

**"C"** (the "Engagement Letter"),[3] which is incorporated herein by reference; (ii) approving the terms of Source's employment, including the proposed fee structure and indemnification provisions set forth in the Engagement Letter, subject to the standards set forth in sections 327 and 330 of the Bankruptcy Code, effective *nunc pro tunc* to the Petition Date; and (iii) granting such other and further relief as the Court deems just and proper.

## QUALIFICATIONS

8.       Source is an investment banking firm, founded in 1992 with its principal office located in Westport, Connecticut.   Source has regional offices in Connecticut, Arizona, California, Florida, Hawaii, Kentucky, Massachusetts, and New York. Source is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

9.       Source provides a broad range of corporate advisory services to its clients pertaining to public and private offerings, recapitalizations, restructurings, and mergers and acquisitions. Source and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings. Source employs numerous professionals with experience on advising companies through section 363 asset sales and chapter 11 confirmations.  Vik Grover, Senior Managing Director of Source has extensive experience in the telecommunications sector as well as substantial high level institutional and high net worth investor contacts in the field. Mr. Grover has advised companies in various capacities in dozens of bankruptcies and restructurings in the sector for over 15 years.

10.       Based on the breadth of Source's and its professionals' experience in restructurings and in the telecommunications sector, as well as its reputation in providing investment banking services, the CLEC Debtors, after due deliberation, determined it would be

---

[3] Source was originally engaged by the CLEC Debtors' ultimate parent company Cordia Corporation —an entity which is not a Debtor in the Chapter 11 Cases—on November 5, 2010.  Subsequently on April 29, 2011, Source and the CLEC Debtors entered into the Engagement Letter after identifying which entities would be the subject of the Chapter 11 Cases.

in the best interest of their estates, creditors and stakeholders to retain Source as their investment banker in the Chapter 11 Cases. As such, the CLEC Debtors believe that Source is qualified and uniquely situated to perform the work required to facilitate the sale of the CLEC Debtors' assets.

## INVESTMENT BANKING SERVICES

11. As more fully set forth in the Engagement Letter, the CLEC Debtors seek to retain Source to assist in the proposed sale of the CLEC Debtors' assets, and render, as requested by the CLEC Debtors, investment banking services to the CLEC Debtors in connection with these Chapter 11 Cases including, without limitation, the following:

(a) to the extent Source deems necessary, appropriate and feasible, or as the CLEC Debtors may request, review and analyze the CLEC Debtors' assets and their operating and financial strategies, and assist in the preparation of financial projections;

(b) assist and advise the CLEC Debtors in the anticipated sale of their assets, operations and/or stock

(c) determine and evaluate the risks and benefits of considering, initiating and consummating any transaction;

(d) preparation of a confidential information memorandum and, when requested by the CLEC Debtors, pursue candidates for the purpose of acquiring the CLEC Debtors' assets; document contacts with said candidates and provide supporting evidence and testimony to the Court as necessary to validate that a full market test for the assets has occurred; and

(e) such other financial advisory as may be agreed upon by Source and the CLEC Debtors, and that are within the scope of the Engagement Letter

12. The services that Source will provide to the CLEC Debtors are necessary to enable the CLEC Debtors to maximize the value of their estates. The work to be performed by Source is critical to the success of the Chapter 11 Cases.

13. Subject to this Court's approval of the Application, Source is willing to serve as the CLEC Debtors' investment banker and to perform the services summarized above and as specifically set forth in the Engagement Letter.

## PROFESSIONAL COMPENSATION

14. Source will apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in connection with the CLEC Debtors' Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Source has agreed to accept as compensation such sums as may be allowed by the Court. Source understands that fee awards are subject to approval by this Court.

15. Source will seek compensation for the services of each professional acting on behalf of the CLEC Debtors in this case at the rate of $300 per hour (the "Hourly Compensation"). The Hourly Compensation for professional services rendered by Source will be capped at $25,000. Subject to Court approval in accordance with sections 327 and 330 of the Bankruptcy Code, the CLEC Debtors will pay to Source the Hourly Compensation and will reimburse Source for all actual, necessary expenses and other charges incurred relating to the professional services provided to the CLEC Debtors, including, but not limited to travel and lodging, data and word processing, graphics and communication charges, research costs, and courier services and fees. Compensation for additional professional services contracted for by Source shall be the responsibility of the CLEC Debtors and Source shall seek prior written approval of the CLEC Debtors for all expenses over $200.

16. In addition, the CLEC Debtors have agreed to pay Source a success fee (the "Success Fee") as follows:

> (a) 1% of the total consideration paid from the sale of the CLEC Debtors' assets including initial consideration, assumption of and/or indemnification for liabilities and tax obligations, and earn out clauses. The Success Fee will be

due and payable upon transaction closing or final order of the Bankruptcy Court, paid in cash from transaction proceeds.

17.     In addition, upon the closing of a transaction, Source will also receive 500,000 restricted shares of Cordia Corporation common stock.

18.     The CLEC Debtors believe Source's employment and compensation are competitive with those entered into by other investment banking firms when rendering comparable services.  Given the numerous issues that Source may be required to address in the Chapter 11 Cases, Source's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Source's services for engagements of this nature in both out-of-court and chapter 11 contexts, the CLEC Debtors agree that the terms of compensation in the Engagement Letter are reasonable under the standards set forth below and are market-based.

## INDEMNIFICATION

19.     The Engagement Letter provides that the CLEC Debtors will indemnify and hold harmless Source and its personnel from and against any third-party losses, claims, damages, judgments, assessments, costs and other liabilities brought against, paid or incurred by the CLEC Debtors at any time and in any way arising out of or relating to Source's services under the Engagement Letter, except where such claims, liabilities, costs and expenses are the result of gross negligence, bad faith or willful misconduct of Source's personnel. The indemnification is to survive the termination of Source's retention. During the administration of these cases, any request for indemnification by Source pursuant to the Engagement Letter shall be made by application to the Court, and a hearing.

## DISINTERESTEDNESS

20.     To the best of the CLEC Debtors' knowledge, other than as set forth in the Grover

Verified Statement, Source has not represented and has no relationship with: (i) the CLEC Debtors; (ii) their creditors or equity security holders; (iii) any other parties in interest in these cases; (iv) the respective attorneys and accountants of any of the foregoing; or (v) the United States Trustee or any person employed in the Office of the United States Trustee for the Middle District of Florida, in any matter relating to these cases.

21. To the best of the CLEC Debtors' knowledge, other than as set forth in the Grover Verified Statement, Source: (i) does not hold or represent any interest adverse to the CLEC Debtors or their estates on any matters in which Source is to be engaged; (ii) is "disinterested" (as such term is defined in 11 U.S.C. § 101(14), as modified in 11 U.S.C. § 1107(b)); and (iii) has no prior connection with the CLEC Debtors, their creditors or any other party in interest.

**WHEREFORE**, the CLEC Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit "B"** (i) authorizing the CLEC Debtors to retain and employ Source as its investment banker, *nunc pro tunc* to the Petition Date; (ii) approving the terms of Source's employment as set forth in the Engagement Letter, *nunc pro tunc* to the Petition Date; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: May 7, 2011

Respectfully submitted,

BILZIN SUMBERG BAENA PRICE & AXELROD LLP
*Proposed Counsel for the CLEC Debtors*
1450 Brickell Avenue, Suite 200
Miami, FL 33131
Telephone: (305) 374-7580
Facsimile: (305) 375-7593

By: /s/   Jeffrey I. Snyder
       Scott L. Baena

Fla. Bar No. 186445
sbaena@bilzin.com
Jason Z. Jones
Fla. Bar No. 186554
jjones@bilzin.com
Jeffrey I. Snyder
Florida Bar No. 21281
jsnyder@bilzin.com

# Exhibit "A"

## **<u>Grover Verified Statement</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          Case Nos. 6:11-bk-06493
                                                through 6:11-bk-06497

**CORDIA COMMUNICATIONS CORP.,**               **Chapter 11**
**et al.[4],**

        **Debtors.**                            **Jointly Administered**

_____/

## DECLARATION OF VIK GROVER IN SUPPORT OF THE APPLICATION BY THE CLEC DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF SOURCE CAPITAL GROUP, INC. AS INVESTMENT BANKER TO THE CLEC DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE

STATE OF                          )
                                  )    ss.
COUNTY OF                         )

        Vik Grover, being duty sworn, deposes and says

        1.      I am over the age of eighteen and if called upon to testify to the following could and would do so based upon my personal knowledge.

        2.      I am a Managing Director at Source Capital Group, Inc. ("Source"), and am duly authorized to submit this Declaration on behalf of Source (the "Grover Declaration"). This Declaration is submitted in support of the Application of the CLEC Debtors (as defined in the Applciation) in these Chapter 11 Cases for an order authorizing employment and retention of Source Capital Group, Inc. as investment banker to the CLEC Debtors (the "Application").

_____

[4]     The last four digits of the taxpayer identification number for each of the CLEC Debtors are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], and Northstar Telecom, Inc. [9662].

3.     This Declaration is also submitted as the statement required pursuant to section 504 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure.

4.     Except as set out below, neither I, nor Source, nor any officer of the firm, insofar as I have been able to ascertain, has any connection with the CLEC Debtors in these Chapter 11 Cases, or any interest materially adverse of any class of creditors or equity security holders by reason of any direct or indirect relationship to the CLEC Debtors, or their twenty largest creditors, or any other parties in interest herein, or their respective attorneys with respect to the matter on which Source is being retained.

5.     Source provides a broad range of corporate advisory services to its clients pertaining to public and private offerings, recapitalizations, restructurings, and mergers and acquisitions. Source and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings. Source has been assisting the CLEC Debtors in the proposed sale of their assets, and render, as requested by the CLEC Debtors, investment banking services to the CLEC Debtors in connection with these Chapter 11 Cases.

6.     Source has agreed to provide investment banking services to the CLEC Debtors in these Chapter 11 Cases, pursuant to the terms and conditions of the engagement letter, dated April 29, 2011, (the "Engagement Letter"). Among other things, the Engagement Letter provides that Source will apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in connection with the CLEC Debtors' Chapter 11 Cases and seek compensation for the services of each professional acting on behalf of the CLEC Debtors in this case at the rate of $300 per hour (the "Hourly

Compensation"). The Hourly Compensation for professional services rendered by Source will be capped at $25,000. Subject to Court approval in accordance with sections 327 and 330 of the Bankruptcy Code, the CLEC Debtors will pay to Source the Compensation and will reimburse Source for all actual, necessary expenses and other charges incurred relating to the professional services provided to the CLEC Debtors.

7. In addition, the CLEC Debtors have agreed to pay Source a success fee (the "Success Fee") as follows:

    a. 1% of the total consideration paid from the sale of the CLEC Debtors' assets including initial consideration, assumption of and/or indemnification for liabilities and tax obligations, and earn out clauses. The Success Fee will be due and payable upon transaction closing or final order of the Bankruptcy Court, paid in cash from transaction proceeds.

8. In addition, upon the closing of a transaction, Source will also receive 500,000 restricted shares of Cordia Corporation common stock.

9. The Engagement Letter provides that the CLEC Debtors will indemnify and hold harmless Source and its personnel from and against any third-party losses, claims, damages, judgments, assessments, costs and other liabilities brought against, paid or incurred by the CLEC Debtors at any time and in any way arising out of or relating to Source's services under the Engagement Letter, except where such claims, liabilities, costs and expenses are the result of gross negligence, bad faith or willful misconduct of Source's personnel. The indemnification is to survive the termination of Source's retention. During the administration of these cases, any request for indemnification by Source pursuant to the Engagement Letter shall be made by application to the Court, and a hearing.

10. Some of Source's present and future employees may have, or may in the future have, personal investments in funds or other entities, over whose investment decisions such

employees have no input or control, that may have made, or may in the future make, investments in the CLEC Debtors' entities, or those of their creditors, or other parties in interest in this case.

11.    Based on the foregoing, Source is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that Source:

       a.  is not a creditors, equity security holder, or insider of the CLEC Debtors;
       b.  is not and was not within 2 years before the date of the filing of the petition, a director, officer, or employee of the CLEC Debtors; and
       c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the CLEC Debtors or for any other reason.

12.    No agreement presently exists to share any compensation received by Source for its services with any other person or firm, other than to compensate the employees and shareholders of Source. If any such third-party agreement is entered into, Source undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

13.    To the best of my knowledge, Source has not represented the CLEC Debtors' creditors, equity security holders, or any other parties in interest, or their respective attorneys and accountants, the United States Trustee, or any psrson employed in the Office of the United States Trustee, in any matters directly related to the CLEC Debtors' estates. Neither I, nor Source, nor any other officer of the firm, insofar as I have been able to ascertain, represents any interest adverse to the CLEC Debtors herein, or their estates in the matters upon which Source is to be engaged. Source and Source's personnel may have business associations with certain creditors and professional advisors to the CLEC Debtors' estates unrelated to these Chapter 11 Cases. In addition, in the ordinary course of business, Source may engage counsel or other professionals in unrelated matters that now represent, or may in the future represent, creditors or other interested parties in these cases.

14.     To the best of my knowledge, information and belief, Source is disinterested and holds no materially adverse interest as to the matters upon which Source is to be retained. To the extent I discover any facts bearing on the matters described herein during the period of Source's retention, I will supplement the information contained in this Declaration.

15.     I am generally familiar with the Bankruptcy Code, and the Bankruptcy Rules, and Source will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 6, 2011.

Vik Grover

# Exhibit "B"

## **<u>Proposed Order</u>**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                              Case Nos. 6:11-bk-06493
                                                    through 6:11-bk-06497

**CORDIA COMMUNICATIONS CORP.,**                    **Chapter 11**
**et al.[1],**

      **Debtors.**                                    **Jointly Administered**
_____/

**[PROPOSED] ORDER GRANTING APPLICATION FOR ENTRY
OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
SOURCE CAPITAL GROUP, INC. AS INVESTMENT BANKER TO THE CLEC
DEBTORS _NUNC PRO TUNC_ TO THE PETITION DATE**

THIS CAUSE came for hearing before the Court on May 18, 2011 at 3:00 p.m. upon

consideration of the application (the "Application") [ECF No. ___] of the CLEC Debtors (as

defined in the Application) and the verified statement of Vik Grover, Managing Director of

Source (the "Grover Verified Statement"), for entry of an Order authorizing the employment of

Source Capital Group, Inc. ("Source") _nunc pro tunc_ to May 1, 2011 as investment banker for

the CLEC Debtors, pursuant to sections 327(a), 330 and 1107 of title 11, United States Code, 11

U.S.C. §§ 101 _et seq._ (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules for the

Bankruptcy Court for the Middle District of Florida ("Local Rules"). The Court, having

reviewed the Application, the Grover Verified Statement, the record in these cases, and the

---

[1]      The last four digits of the taxpayer identification number for each of the CLEC Debtors are: Cordia Communications Corp. [1591], Cordia Communications Corp. of VA [6448], My Tel Co., Inc. [5042], and Northstar Telecom, Inc. [9662].

arguments of counsel, is satisfied that Source (a) does not hold or represent an interest adverse to the CLEC Debtors' estates, and (b) is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and finds that the relief requested by the Application appears to be in the best interest of the CLEC Debtors and their estates, their creditors, and other parties in interest; and that due and proper notice of the Application has been provided. Accordingly, after due deliberation and sufficient cause appearing therefore, it is **ORDERED** that:

1.      The Application is **GRANTED**.

2.      Pursuant to sections 327(a) and 330 of the Bankruptcy Code, the CLEC Debtors are authorized to employ and retain Source as investment banker on the terms set forth in the Engagement Letter attached to the Application as Exhibit C (the "Engagement Letter"), *nunc pro tunc* to the Petition Date.

3.      Source shall file applications for allowance of its compensation and expenses with this Court pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

4.      Source shall be compensated for professional services rendered and reimbursed for expenses incurred as set forth in the Engagement Letter, but in all respects subject to the reasonableness standard set forth under section 330 of the Bankruptcy Code.

5.      The Indemnity Provisions set forth in the Engagement Letter are approved as set forth therein.

6.      The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this order in accordance with the Application.

7.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this order.

**DONE AND ORDERED** on _____.


_____
Karen S. Jennemann
United States Bankruptcy Judge

Copies furnished to:

Scott L. Baena, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131

# Exhibit "C"

# **Engagement Letter**

# Source
Capital Group, Inc.

Members NASD, SIPC                    Investment Bankers / Brokers

May 2, 2011

Kevin Griffo
Chief Executive Officer
Cordia Corporation
2900 Westchester Avenue, #103
Purchase, New York 10577

Dear Kevin:

The purpose of this letter is to amend the understanding and agreement (the "Agreement") among Source Capital Group, Inc., ("SCG"), Cordia Corporation ("Cordia" or the "Company"), and the following subsidiaries of the Company: (a) Cordia Communications Corp.; (b) My Tel Co., Inc.; (c) Northstar Telecom Inc.; (d) Cordia Communications Corp. of Virginia; and (e) Cordia Prepaid Corp. (collectively, (a)-(e), the "Debtors") regarding the retention of SCG by the Debtors as their exclusive financial advisor for the purposes set forth herein.

This Agreement supersedes all prior Agreements, and any and all claims related to pre-existing compensation agreements which may exist with respect to a transaction with the Company and Admit Capital, LLC, Titans and/or Srinath Narayanan. Under this Agreement, SCG will provide financial services to the Debtors as an exclusive advisor as follows:

A) Raising of Capital. N/M.

B) Fees, Commissions & Expenses. The Debtors agree to pay the following fees to SCG for its services.

1. Mergers, Acquisitions & Joint Ventures ("MA&JV"). SCG will assist and advise the Debtors in the anticipated restructuring and sale of their assets, operations and/or stock, including administering the proposed auction of the Debtors' assets. Based on the total consideration paid for these assets, including initial consideration, assumption of and/or indemnification for liabilities and tax obligations, and earn-out clauses, SCG shall receive a fee of 1% of the total consideration payable in cash. Upon completion of said transactions and the sale of assets through restructuring in a sale under section 363 of the Bankruptcy Code, SCG shall also receive 500,000 restricted shares of the Company's common stock.

For assisting in the sale process and providing testimony and work product, SCG shall also receive a consulting agreement payable at the rate of $300/hour, with a cap of $25,000. SCG shall prepare a confidential information memorandum (CIM) and, when requested by the Debtors, pursue candidates for the purpose of acquiring the assets operations and/or stock of the Debtors. SCG will document any and all contacts with said targets and provide supporting evidence and testimony to the Court to validate a full market test for these assets has occurred.

276 Post Road West ~ Westport, CT 06880    • 203-341-3500 • 800-882-2889 • Fax 203-341-3515
MIAMI 2526243.1 7946635829

2. Expenses. In addition to any fees that may be payable to SCG under this Agreement, the Debtors agree to reimburse SCG for its reasonable out-of-pocket expenses incurred in connection with the services rendered by SCG hereunder (including, without limitation, travel and lodging, data and word processing, graphics and communication charges, research costs, and courier services and fees). SCG will, on a weekly basis, provide the Debtors with report regarding the expenses reasonably incurred. Compensation for any additional professional services (e.g. legal or consulting) contracted for by SCG, to be performed for the benefit of the Debtors by outside parties, is the responsibility of the Debtors and will be paid directly by the Debtors to such party. SCG will not contract for such services without the prior written approval of the Debtors with regard to both the nature of the service and a reasonable estimate of the cost of such service. All expenses over $200 must be pre-approved by the Debtors.

3. All cash payments under this Agreement shall be made in U.S. dollars and without withholding or deduction of any tax, assessment or other governmental charges unless required by law. At closing any and all fees associated with this transaction are to be settled. Fees should be made payable and wired to:

> Source Capital Group, Inc.
> 276 Post Road West
> Westport, CT 06880
>
> ABA# 026009593
> Bank of America
> Westport, CT
> Acct.# 9361882644

C) Information. The Debtors will furnish or cause to be furnished to SCG, such information, as SCG believes appropriate to its assignment (all such information so furnished being the "Information"). The Debtors recognize and confirm that SCG (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification and (d) will not make an appraisal of any assets in connection with its assignment

D) Exclusivity. With regard to the sale of the assets, operations and/or stock of the Debtors, SCG understands that its role as advisor will be exclusive subject to approval by the Bankruptcy Court presiding over their restructuring and sale processes.

E) Confidentiality. Except as contemplated by the terms hereof or as required by applicable law or legal process, SCG shall keep confidential all non-public information provided to it by or at the request of the Debtors, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with SCG's performance of its responsibilities hereunder. The Debtors understand that any documents, presentations or analyses prepared by SCG are proprietary and SCG is under no obligation to provide (by e-mail, CD-ROM, flash drive or otherwise) either the Debtors or their assigns with the computer files of such work product. Except as required by applicable law, any advice to be provided by SCG under this Agreement shall not be disclosed publicly or made available to third parties without the prior written consent of SCG. In addition, SCG may not be otherwise publicly referred to without its prior written consent. All services, advice and information

and reports provided by SCG to the Debtors in connection with this assignment shall be for the sole benefit of the Debtors and shall not be relied upon by any other person.

F) Indemnity. The Debtors acknowledge and agree that SCG has been retained to act solely as financial advisor to the Debtors. In such capacity, SCG shall act as an independent contractor, and any duties of SCG arising out of its engagement pursuant to this Agreement shall be owed solely to the Debtors. The Debtors agree to indemnify SCG in accordance with the indemnification agreement attached as Exhibit A.

G) Term & Termination. The term of SCG's engagement hereunder shall extend from the date hereof through September 30, 2011 (the "Expiration Date"), but may be renewed for an additional 90 days upon written notice by the Debtors. Notwithstanding the foregoing, the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of SCG as an independent contractor and the limitation on to whom SCG shall owe any duties will survive any such termination, and any such termination shall not affect the Company's obligations under the indemnification agreement.

H) Rights of First Refusal. N/M.

I) Advertisements. The Debtors acknowledge that SCG may, at its option and expense, place an announcement in such newspapers and periodicals as it may choose, stating that SCG has acted as the financial advisor to the Debtors. SCG agrees that the Debtors will have the right to approve the form and timing of such announcement.

Source Capital Group, Inc.

This Agreement (including the attached indemnification) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

This Agreement sets forth the entire agreement with respect to the engagement of SCG by the Debtors and the Company, including the fees and warrants payable as a result of such engagement.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to SCG the duplicate copy of this Agreement, including the indemnification agreement attached hereto as Exhibit A.

By: _____
Kevin Griffo
Chief Executive Officer
Cordia Corporation

By: _____
Kevin Griffo
President
Cordia Communications Corp.

By: _____
Kevin Griffo
President
My Tel Co., Inc.

By: _____
Kevin Griffo
President
Northstar Telecom Inc.

By: _____
Kevin Griffo
President
Cordia Communications Corp. of Virginia

By: _____
Joel Dupre
President
Cordia Prepaid Corp

Source Capital Group, Inc.

This Agreement (including the attached indemnification) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

This Agreement sets forth the entire agreement with respect to the engagement of SCG by the Debtors and the Company, including the fees and warrants payable as a result of such engagement.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to SCG the duplicate copy of this Agreement, including the indemnification agreement attached hereto as Exhibit A.

By: _____
Kevin Griffe
Chief Executive Officer
Cordia Corporation

By: _____
Kevin Griffo
President
Cordia Communications Corp.

By: _____
Kevin Griffo
President
My Tel Co., Inc.

By: _____
Kevin Griffo
President
Northstar Telecom Inc.

By: _____
Kevin Griffo
President
Cordia Communications Corp. of Virginia

By: _____
Joel Dupre
President
Cordia Prepaid Corp

Source Capital Group, Inc.

By: _____
Vik Grover, CFA
Managing Director
Source Capital Group, Inc.

By: _____
Russell W. Newton
Chief Financial Officer
Source Capital Group, Inc.

## Exhibit A

This Exhibit A is a part of and is incorporated into that certain letter agreement, April 29, 2011 (the "Agreement"), by and among Cordio Corporation, a Nevada Corporation and Source Capital Group, Inc. (the "Placement Agent") and the Debtors. Capitalized terms used herein and not otherwise defined shall have the respective meanings provided in the Agreement.

The Company agrees to indemnify and hold harmless the Placement Agent and the Placement Agent agrees to indemnify and hold harmless the Company (within the meaning of Section 15 of the Securities Act), and the Debtors, and its respective directors, officers, agents and employees (each such entity or person, an "Indemnified Person") from and against any third-party losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, the "Liabilities"), and shall reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of one counsel for all Indemnified Persons, except as otherwise expressly provided herein) (collectively, the "Expenses") incurred by an Indemnified Person in defending any third-party claim, action, proceeding or investigation, whether or not any Indemnified Person is a party thereto (collectively, the "Actions"), (i) caused by, or arising out of or in connection with, any untrue statement or alleged untrue statement of a material fact contained in any offering documents prepared by the Company or the Debtors (including any amendments thereof and supplements thereto) (the "Offer Documents") or by any omission or alleged omission to state therein a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading (other than untrue statements or alleged untrue statements in, or omissions or alleged omissions from, information relating to an Indemnified Person furnished in writing by or on behalf of such Indemnified Person expressly for use in the Offer Documents) or (ii) otherwise arising out of or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions; provided, however, that, in the case of clause (ii) only, neither the Company nor the Debtors shall be responsible for any Liabilities or Expenses of any Indemnified Person that have resulted primarily from such Indemnified Person's (x) gross negligence, bad faith or willful misconduct in connection with any of the advice, actions, inactions or services referred to above or (y) use of any offering materials or information concerning the Company or the Debtors in connection with the offer or sale of the Securities in the Transaction which were not authorized for such use by the Company or the Debtors and which use constitutes gross negligence, bad faith or willful misconduct. Each Indemnified Person shall have the right to apply to the Bankruptcy Court for approval of reimbursement of Expenses as they are incurred in connection with enforcing such Indemnified Person's rights under the Agreement.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Company and the Debtors in writing; provided that failure by any Indemnified Person so to notify the Company and the Debtors shall not relieve the Company or the Debtors from any liability which the Company or the Debtors may have on account of this indemnity or otherwise to such Indemnified Person, except to the extent the Company or the Debtors shall have been prejudiced by such failure. The Company or the Debtors, as applicable, shall, if it so elects, assume the defense of any such Action including the employment of counsel reasonably satisfactory to the Placement Agent, which counsel may also be counsel to the Company or the Debtors. Any Indemnified Person shall have the right to employ separate counsel in any such action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless: (i) the Company or the Debtors has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impeded parties) include such Indemnified Person and the Company or the Debtors , and such Indemnified Person shall have been advised in the reasonable opinion of counsel that there is an actual conflict of interest that prevents the counsel selected by the Company or the Debtors, as applicable, from representing both the Company or the Debtors (or another client of such counsel) and any Indemnified Person; provided that the Company or the Debtors, as applicable, shall not in such event be responsible hereunder for the fees and expenses of more than one firm of separate counsel for all Indemnified Persons in connection with any Action or related Actions, in addition to any local counsel. Neither the Company nor the Debtors shall be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld). In addition, neither the Company nor the Debtors shall, without the prior written consent of the Placement Agent (which shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not such Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of each Indemnified Person from all Liabilities arising out of such Action for which indemnification or contribution may be sought hereunder. The indemnification required hereby shall be made by periodic payments of the amount thereof during the course of the investigation or defense, as such expense, loss, damage or liability is incurred and is due and payable.

Source Capital Group, Inc.

Notwithstanding the above, no person guilty of fraudulent misrepresentation within the meaning of Section 11(f) of the Securities Act of 1933, as amended, shall be entitled to contribution from a party who was not guilty of fraudulent misrepresentation.

The Company and the Debtors also agree that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Debtors, as applicable, for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Company or the Debtors, as applicable, that have resulted primarily from such Indemnified Person's gross negligence, bad faith or willful misconduct in connection with any such advice, actions, inactions or services.

The reimbursement, indemnity and contribution obligations of the Company and the Debtors set forth herein shall apply to any modification of the Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Person's services under or in connection with, the Agreement.